ZENITH RADIO CORPORATION, International Brotherhood of Electrical Workers, the Independent Radionic Workers of America, et al., Appellants,

v.

The UNITED STATES, et al., Appellees.

Nos. 85–2246, 85–2286.

United States Court of Appeals, Federal Circuit.

Feb. 10, 1986.

Frederick L. Ikenson, Washington, D.C., argued for appellant Zenith. With him on brief was J. Eric Nissley, of counsel.

Paul D. Cullen, Collier, Shannon, Rill & Scott, Washington, D.C., argued for appellant IBEW. With him on brief were Paul C. Rosenthal and Lawrence J. Lasoff.

Lawrence R. Walders, Graham & James, Washington, D.C., argued for certain appellees. With him on brief were H. William Tanaka and Patrick O'Leary. Thomas P. Ondeck, Baker & McKenzie, Washington, D.C., for Hitachi, Rodney F. Page and Robert H. Huey, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Toshiba, Gail T. Cumins, Sharretts, Paley, Carter & Blauvelt, New York City, for Sanyo, Peter J. Gartland and Robert D. Piliero, Wender, Murase & White, New York City, for Sharp Electronics, Stuart M. Rosen, A. Paul Victor, Charles H. Bayar and Bret E. Suval, Weil, Gotshal & Manges, New York City, for Matsushita Elec., and Brian S. Goldstein and Edward B. Ackerman, Siegel, Mandell, et al., for General Corp., etc., also on brief.

Sheila N. Ziff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee U.S. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Velta A. Melnbrencis, Asst. Director.

Before FRIEDMAN, RICH and NIES, Circuit Judges.

NIES, Circuit Judge.

The subject of this suit is a final determination of the United States Department of Commerce, International Trade Administration (ITA), under § 731 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673 *et seq.* (1982), which assessed antidumping duties on certain television receiving sets, monochrome and color, imported from Japan.[1] Zenith and other parties to this action[2] challenged ITA's determination by filing a civil action in the United States Court of International Trade (CIT), alleging that, because of computation errors, ITA's deter-

---

1. The Final Determination is reported at 46 Fed. Reg. 30163–67 (1981).

2. Suits were filed by Zenith Radio Corporation and by the Committee to Preserve American Color Television (a/k/a COMPACT), and Imports Committee, Tube Division, Electronic Industries Association. Those suits were consolidated before the CIT, and additional parties have subsequently been added. In the present appeals, No. 85–2246 is by Zenith and No. 85–2286 is by International Brotherhood of Electrical Workers, Independent Radionic Workers of America, and International Union of Electronic, Electrical, Technical, Salaried and Machine Workers, AFL–CIO. Appellants will be collectively referred to as "Zenith."

minations of dumping margins for various Japanese manufacturers were significantly understated. The CIT granted the government's motion for summary judgment, thus upholding ITA's determination, relying in part on this court's opinion in *Smith Corona Group Consumer Products Division, SCM Corp. v. United States*, 713 F.2d 1568 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). This appeal is from the final judgment of the CIT, Watson, J., reported at 606 F.Supp. 695 (1985). We affirm.

### Opinion

In this appeal, Zenith challenges two aspects of the CIT's decision: (1) the CIT's holding that the exporter's sales price (ESP) offset provision, 19 C.F.R. § 353.-15(c) is lawful, and (2) the CIT's holding that the foreign market value may be adjusted by discounts and rebates which are not available to all purchasers at wholesale in the home market.

### I.

■ The validity of the ESP offset regulation was exhaustively considered by this court in *Smith Corona, supra*. There, the court addressed and rejected arguments comparable to those presently advanced by Zenith. In upholding the offset, this court stated:

> In view of the discretion accorded the Secretary under the statute to make adjustments to foreign market value, we conclude that the exporter's sales price offset, 19 C.F.R. § 353.15(c) is a proper and reasonable exercise of the Secretary's authority to administer the statute fairly. Thus, insofar as it is challenged here, 19 C.F.R. § 353.15(c) is valid.

*Id.* at 1579. Thus, the CIT properly upheld the ESP offset in light of this precedent. This panel has considered Zenith's attack on that aspect of the *Smith Corona* decision. However, even if the panel were not

bound by its precedential effect, we would reach the same conclusion.[3] The decision of the CIT upholding the regulation is, therefore, affirmed.

### II.

Zenith next asserts that Judge Watson erred in allowing the FMV to be adjusted downward by discounts and rebates that were not offered to all purchasers at wholesale. Zenith argues that discounts and rebates are related to price, and, as a consequence, must meet the requirements of § 1677b(a)(1)(A) if they are to be used in calculating the foreign market value (FMV). Under that section, the FMV calculation begins with the price at which the goods are sold or offered for sale in the foreign market. Section 1677(14)(A) further specifies that a qualifying price must be one that was offered to *all purchasers*. Therefore, Zenith concludes, discounts and rebates can only enter the FMV calculation if they are available to all purchasers. The subject discounts and rebates admittedly were not offered to all. Although the CIT opined that Zenith's interpretation of the statute is a plausible one, it correctly rejected Zenith's argument, again, on the basis of this court's decision in *Smith Corona*. On that point, it was held that discounts and rebates were properly deductible from FMV as "differences in the circumstances of sale." *Smith Corona, supra*, at 1580. Under § 1677b(a)(4)(B), an adjustment arising from a difference in circumstances of sale does not depend on availability to all purchasers. *See* 606 F.Supp. at 701.

■ Unlike the "ESP offset" issue, which Zenith concedes was decided by the court in *Smith Corona*, Zenith argues that *Smith Corona* did not decide the "differences in circumstances of sale" issue, which, it says, was not briefed by the parties in that case. Even though the court in *Smith Corona* clearly upheld the making

---

**3.** Recognizing that under the operating procedures of this court, a decision by a prior panel is binding precedent on another panel, Zenith suggested that this case be considered in banc.

This opinion has been circulated to the entire court prior to issuance, and no judge endorsed the suggestion.

of adjustments for rebates on the FMV side of the equation, Zenith maintains that the parties in that case focused only on the issue of whether the rebates were "directly related" to the sales, and did not otherwise challenge their deductability. Judge Watson was correct, however, in ruling that the question *was* necessarily decided in *Smith Corona.* The result reached by the court is clear, and resolution of the threshold question of whether adjustments for rebates could be made under § 1677b(a)(4)(B) was a necessary predicate to the court's analysis of the "directly related" issue. Moreover, we note that Zenith Radio Corporation (one appellant here) filed a brief as *amicus curiae* in the *Smith Corona* appeal, in which Zenith argued that the discounts or rebates there involved could not give rise to difference in circumstances of sale adjustments.[4] In any event, the issues resolved by a court are defined by the facts in the case and the law applied; they are not necessarily limited to those briefed by the parties.

The questions presented in this appeal are controlled by this court's decision in *Smith Corona.* Because Judge Watson correctly interpreted and applied that precedent to the facts of the present case, we affirm.

AFFIRMED.

---

**4.** That Zenith argued the issue in the prior case is not controlling on our decision here. The authority cited by International Brotherhood of Electrical Workers strongly supports the proposition that the filing of an amicus brief is insufficient to bind a nonparty to the result of a proceeding. However, that principle simply has no application here, where *stare decisis,* not *res judicata,* is implicated. Zenith's amicus brief is noted simply as another indication that the issue was one which was present in *Smith Corona* and necessarily ruled on.