CHINA NATIONAL METALS & MINERALS IMPORT & EXPORT CORPORATION, China National Machinery & Equipment Import & Export Corporation, China National Machinery Import & Export Corporation, Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 86–06–00719.

United States Court of International Trade.

Nov. 24, 1987.

Graham & James, Lawrence R. Walders, Washington, D.C., Denis H. Oyakawa, Los Angeles, Cal., and Jeffrey L. Snyder, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Jus-

tice, Elizabeth C. Seastrum, for defendant, of counsel: Mary Patricia Michel, Atty. Advisor, U.S. Dept. of Commerce, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

This action challenges the decision by the Department of Commerce, International Trade Administration (Commerce) in *Certain Iron Construction Castings from the People's Republic of China; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9483 (March 19, 1986). Plaintiffs contend that it was error for Commerce to determine foreign market value (FMV) based on prices from a basket of countries which were not economically comparable to the PRC, alleging that price information from a comparable surrogate country was available. The action is before the Court on plaintiffs' motion for judgment upon the administrative record.

## BACKGROUND

Plaintiffs are manufacturers and exporters of iron construction castings from the People's Republic of China (PRC), and were subject to the antidumping investigation, which resulted in the final determination of sales at less than fair value (LTFV). 51 Fed.Reg. 9483. To determine FMV in the PRC, which, for purposes of the investigation, is a state-controlled, non-market economy (NME), Commerce was required to find an appropriate surrogate country, from which prices or constructed value could be derived. 19 U.S.C. § 1677b(c); 19 C.F.R. § 353.8. In its preliminary determination, Commerce used the prices in India, as estimated in the petition, for determining FMV in the PRC. 50 Fed.Reg. 43594 (October 28, 1985). For its final determination, Commerce identified eight potential non-state controlled countries which could serve as a surrogate country: Egypt, India, Indonesia, Morocco, Pakistan, Philippines, Sri Lanka, and Thailand. However, when requested to complete the questionnaires supplied by Commerce each country refused to cooperate except Indonesia, whose responses were inadequate. Commerce thus used the average f.o.b. import values of iron construction castings from all countries exporting this merchandise to the United States, which were not subject to antidumping or countervailing duty orders or investigations, and which did not exhibit price aberrations. This yielded Italy, Japan, Switzerland, Taiwan, and the United Kingdom.

Plaintiffs challenge this selection, as the least preferable method, claiming it was error for Commerce not to use prices from a surrogate country of comparable economic development, as required by the regulations. Plaintiffs contend that India is comparable to the PRC in economic development, whereas the market basket is comprised of countries at a far more advanced stage of economic development. Plaintiffs proffer three sources from which price information from India was available: (1) home market price information from the concurrent investigation on iron construction castings in India; (2) U.S. sales price of Indian imports based on Customs' invoices; or (3) average unit values of this product imported from India as reflected in U.S. import statistics (IM 146–data).

However, Commerce concluded that use of the first two sources would constitute a breach of its duty to not disclose confidential information submitted in a concurrent investigation; and because of these confidentiality restrictions, adjustments necessary to the third alternative could not be made, thus this method would not fall within the hierarchy set forth in 19 C.F.R. § 353.8.

The issue is whether Commerce's conclusion is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence:

'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ... [It] 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'

*Matsushita Elec. Indus. Co., Ltd. v. United States,* 750 F.2d 927, 933 (Fed.Cir.1984). (Citations omitted).

## DISCUSSION

The regulations set out in 19 C.F.R. § 353.8, promulgated pursuant to 19 U.S.C. § 1677b(c) (1982), establish a hierarchy of methods for determining the FMV of a product from a NME. By identifying a surrogate country, which has a non-state-controlled-economy, the basis for FMV shall be either: (1) the prices for which this merchandise sold, either in that home market, or in third countries; or (2) the constructed value of this merchandise in that surrogate country. Although there is a preference for using prices over constructed value, to the extent possible, this surrogate country should be at a level of economic development comparable to the one under investigation. 19 C.F.R. § 353.8(b)(1). Further, if no comparable surrogate can be identified, then the basis for FMV shall be another non-state-controlled-economy country or countries, suitably adjusted for known differences in the cost of materials and labor. 19 C.F.R. § 353.8(b)(2).

Commerce, having ascertained that there was no comparable surrogate country, employed the "market basket" approach in 19 C.F.R. § 353.8(b)(2). However, concurrent with its investigation into iron construction castings from the PRC, Commerce was also investigating sales of this merchandise from India. *See Certain Iron Construction Castings from India; Final Determination of Sales at Less Than Fair Value,* 51 Fed.Reg. 9486 (March 19, 1986). As a result, plaintiffs allege that Commerce was in possession of adequate home market prices for iron construction castings in India, which should have been used to calculate FMV in the PRC, thus satisfying the first tier in the surrogate selection hierarchy.

Commerce rejected this alternative, relying on 19 U.S.C. § 1677f(b)(1) (1982 and Supp. II 1984), which mandates that proprietary information shall not be disclosed without the consent of the person submitting it, except: to the officer or employee directly involved in conducting the investigation for which it was submitted; or under protective order; or as provided for in subsection (a)(4)(A). This latter subsection permits disclosure of proprietary information received in the course of a proceeding, if it can be disclosed in a form which cannot be associated with, or otherwise be used to identify, the operations of a particular person. Accordingly, Commerce cited its established policy, not to use confidential information gathered in a concurrent investigation involving the same merchandise, without the consent of the submitting party. Commerce determined that such consent had been withheld on behalf of the Indian producers in that unrelated investigation.

■ The Court first addresses plaintiffs' contention that the record does not support Commerce's conclusion that India objected to use of its data. The record does not contain a separate request by Commerce to the producers in India for permission to use the information submitted in the concurrent investigation. Nevertheless, Commerce contacted the government in India initially to seek surrogate country data for purposes of this investigation as well as for an unrelated investigation into steel wire nails from the PRC. The response from the Indian government makes reference to the dual request but explains that "it would not be possible for Indian firms to be used as surrogates in the Chinese industry, in connection with the anti-dumping investigation on steel wire nails." In support of that position, the letter cites the non-comparable costs of production as reflected in: differences in industrial base, infrastructural facilities, and relative factor endowments; as well as different political and economic management, and different priorities in industrial development. R.Doc. 30.

Concededly, the letter does not explicitly indicate the Indian government's objection to the use of its data in this PRC investigation. Nonetheless, it does not seem that consent may be implied based on the record

evidence. In the first instance, the reasons offered by the Indian government in declining to be used as a surrogate are not factually specific to the steel wire nail investigation but refer to general distinctions between the countries. It is relevant at this juncture to note that in the majority of investigations involving the PRC, India has failed to respond to requests for information for the purpose of surrogate country comparison.[1] It is of further import that Commerce reported in its final investigation that the firms in India failed to respond to questionnaires when contacted for surrogate country data in this investigation. 51 Fed.Reg. 9484.

Finally, when plaintiffs herein, as respondents in the investigation below, sought access to the data in the Indian investigation, the Indian producers objected to that disclosure under protective order. R. Doc. 26. It is apparent that India has expressed its intent to not be used as a surrogate for the PRC. In determining whether the Court should sustain Commerce's conclusion that it did not have the consent of the Indian government to use its information, the question is whether the administrative conclusion is rational. *Timken Co. v. United States*, 11 CIT —, —, 673 F.Supp. 495, 500 (1987), (citing *Matsushita Electrical Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir.1984)). It is the factual determinations and the application of legal principles by the agency, which the court must review to ascertain whether those findings of fact and conclusions of law are supported by substantial evidence and in accordance with law. *Industrial Fasteners Group, American Importers Ass'n v. United States*, 2 CIT 181, 190, 525 F.Supp. 885, 892 (1981), *aff'd* 710 F.2d 1576 (Fed.Cir.1983). The Court determines that there is substantial evidence in the record

to support the conclusion that India did object to the use of the information.

The second issue is presented by plaintiffs' assertion that consent from the Indian producers is not necessary because Commerce has incorrectly equated disclosure of the information submitted in confidence with use of that information. It is suggested that Commerce could use the weighted average FMV of the four Indian producers involved in that investigation, thereby avoiding disclosure of the operations of any one producer, and thus satisfy the parameters of § 1677f(a)(4)(A).

 Commerce has determined that in the absence of consent by the submitting party it cannot use data from a concurrent investigation of the same merchandise without compromising the confidential nature of the information. The interpretation of a statute given by the agency authorized to administer it is to be accorded great deference. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978) (Citations omitted). If sufficiently reasonable to be accepted by the Court, the agency's construction need not be the only reasonable conclusion, or the conclusion that the Court would reach. *Id.*

Defendant claims that use of the weighted average FMV from the Indian investigation would preclude verification of the figures as required by 19 U.S.C. § 1677e(a) (1982 and Supp. II 1984):

> The administering authority shall verify all information relied upon in making ... a final determination in an investigation, ... [and] shall report the methods and procedures used to verify such information. If ... unable to verify the accura-

---

1. *Porcelain–on–Steel Cooking Ware from the PRC; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 36419 (October 10, 1986); *Certain Small Diameter Welded Carbon Steel Pipes and Tubes from the PRC; Final Determination of Sales at Less than Fair Value*, 51 Fed.Reg. 25078 (July 10, 1986); *Steel Wire Nails from the PRC; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 10247 (March 25, 1986); *Final Determination of Sales at Not Less Than Fair Value; Barium Carbonate from*

the PRC, 49 Fed.Reg. 33913 (August 27, 1984); *Final Determination of Sales at Less Than Fair Value: Potassium Permanganate From the PRC*, 48 Fed.Reg. 57347 (December 29, 1983). *Compare Final Determination of Sales at Less Than Fair Value: Chloropicrin From the PRC*, 49 Fed. Reg. 5982 (February 16, 1984), where the product in question was not manufactured in India, data from that country was used to construct a value for the PRC.

cy of the information submitted, it shall use the best information available.... It is argued that the case analyst in the Indian investigation would have had to have "blinded" the information in such a way so that the PRC analyst could have used it without violating the confidentiality statute. Further, there were certain adjustments in the Indian investigation which could not have been disclosed. The Court notes that when a party to the investigation, such as plaintiffs herein, would seek to challenge the reliability of the figures used by Commerce in its calculation, Commerce would be seriously constrained in its ability to substantiate the confidential price information of surrogate country producers in India.[2]

Additionally, foreign exporters would have no incentive to comply with future requests for proprietary information, if not assured that protection of such data would not be compromised. Plaintiffs' methodology would seem to circumvent all efforts made by India, the non-party, to prevent use of its information in an unrelated investigation. In consideration of the aforementioned concerns, for Commerce to conclude that it has an obligation not to use confidential information unless and until consent is obtained from the submitting party, is reasonable and not plainly inconsistent with the meaning of 19 U.S.C. § 1677f. *ICC Industries, Inc. v. United States*, 812 F.2d 694, 699 (Fed.Cir.1987).

Plaintiffs further assert that if it was not feasible to use home market data from India, then it would be proper to use Indian sales prices to the United States available from Customs invoices. The Court recognizes that Commerce has almost uniformly refused to use price information from a surrogate whose products are under investigation in an antidumping or countervailing duty case. *Porcelain–On–Steel–Cooking Ware from PRC; Final Determina-*

*tion of Sales at Less Than Fair Value,* 51 Fed.Reg. 36419 (October 10, 1986); *Shop Towels of Cotton from the PRC; Final Results of Administrative Review,* 50 Fed. Reg. 26020 (June 24, 1985); *Carbon Steel Wire Rod from Poland: Final Determination of Sales at Less than Fair Value,* 49 Fed.Reg. 29434 (July 20, 1984). Evidently, the main consideration is the unreliability of the price information due to the unknown dumping margin if any.

However, plaintiffs point to a deviation in this practice in *Certain Small Diameter Welded Carbon Steel Pipes and Tubes from the PRC; Final Determination of Sales at Less Than Fair Value,* where Commerce used the price of imports from Argentina adjusted for the export subsidy found in the recently completed investigation in that country. That situation is distinguishable as Commerce stated that: Argentina offered a far superior product mix over other countries; other countries were subject to VRAs which could tend to distort the price; and the export subsidy was calculated to be less than one per cent. 51 Fed.Reg. 25078 (July 10, 1986).

The petitioners therein also argued that India's prices should be used as comparable surrogate data. However, due to the fact that Indian companies were the subject of a recently completed investigation of the same product, Commerce was compelled to use another alternative, as it was led to understand that cooperation would not be forthcoming. 51 Fed.Reg. at 25080. Commerce has thus been forced to utilize less preferable alternatives when a comparable surrogate refuses to cooperate, and the selection, as to which method it will employ, is dependant upon the critical factors in each investigation.

Although plaintiffs concede that the prices could be adjusted by the dumping margin calculated in the Indian investigation, those results were not issued until the

---

**2.** The importance of verifying the information relied upon is underscored by the Congressional dictate that Commerce must use the best information available if unable to verify the information submitted, or if any person refuses to produce requested data. The enactment of this provision in the Trade Agreements Act of 1979, was to remedy past practices, where verification was not required by law. S.Rep. No. 96–249, 96th Cong. 1st Sess., 98 (1979) U.S. Code Cong. & Admin. News 1979, 381, 484. The purpose of this section would seemingly be thwarted if Commerce merely represents that the figures were verified without disclosing its methods.

same day as were the final results in this investigation. Thus, plaintiffs would consider it proper, in determining FMV in the PRC, for Commerce to adjust export prices from India by a figure calculated in that concurrent investigation before that figure was even publicly available. In this vein, Commerce maintains that problems with confidentiality, paralleling those previously outlined, precluded use of this alternative.

As defendant reasons, although the figures used to calculate the dumping margin in the Indian investigation were verified, and while the verification methodology could be revealed, the data from which this margin was derived could not be disclosed as it was subject to confidentiality restrictions. For purposes of this investigation, the parties, in effect, would be unable to verify the accuracy of the FMV comparison.

Thus, it appears that in order to avoid conflicts between the verification and confidentiality requirements, Commerce found this not to be a viable alternative. It has been acknowledged that in order to effectively administer the antidumping laws, Commerce enjoys some "methodological flexibility." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT ——, —— 636 F.Supp. 961, 966 (1986). The wisdom of these methods withstands scrutiny, if there is support in the record as a whole for the agency's determination and if these methods are in accordance with law. *Carlisle Tire & Rubber Co. v. United States*, 9 CIT 520, 524, 622 F.Supp. 1071, 1075 (1985). It cannot be said that the agency's procedures are not supported by the record or not in accordance with law.

■ Finally, plaintiffs challenge Commerce's refusal to use publicly available average import values from IM–146 statistics adjusted for the dumping margin found. This source contains import quantity and value figures compiled from Customs data by the Census Bureau. Plaintiffs claim that the ITA has in the past

resorted to export prices as reflected in either Customs invoices or IM–146 statistics, when home market prices from a surrogate are not available.

Commerce referred to the logic applied in *Shop Towels of Cotton from the PRC; Final Results of Administrative Review*, which held that adjusting a surrogate country's export price by the amount of net subsidy would not yield an FMV that fell within the hierarchy (19 C.F.R. § 353.8) nor would it be a preferred basis for calculating fair market value;[3] it "would be merely a constructed hypothetical value." 50 Fed.Reg. at 26023.

As defendant submits, the IM–146 data represents a cumulative figure of the total imports from the four producers in India with unknown proportions, it does not equal the actual prices which are really utilized in the dumping investigation. Therefore, the adjustment based on actual prices would bear no relationship to the value derived from the import statistics. Commerce has accurately cited in support of this position 19 U.S.C. § 1677b(c) and 19 C.F.R. § 353.8(a), which provide that in determining foreign market value for a NME, the preference is to use actual prices or costs.

■ Based on the record, the Court cannot conclude that it was an abuse of discretion or not in accordance with law for Commerce to use the market basket approach for lack of reliable data which would satisfy the first tier in the hierarchy. "Failure to use a discretionary alternative method does not constitute error when the agency uses a lawful second method." *Carlisle Tire & Rubber Co.*, 9 CIT at 525, 622 F.Supp. at 1076. In these circumstances, there is no policy or practice in effect which prevents Commerce from exercising its discretion under the law to use preferred price data, even if from non-comparable countries. *Chemical Products Corp. v. United States*, 10 CIT ——, ——, 645 F.Supp. 289, 294 (1986). *See Procelain–On–Steel Cook-*

3. Although in that situation Commerce was placed in a best information available situation due to the respondents' refusal to cooperate, and was not bound by the hierarchy of prefer-

able methods, Commerce outlined its analysis given the premise that it did have an obligation to follow the hierarchy. 50 Fed.Reg. at 26022.

*ware from the PRC, supra,* (producers from comparable surrogates were not willing to cooperate, therefore, FMV was based on average price of imports from market basket); and *Natural Bristle Paint Brushes and Brush Heads from the PRC; Final Determination of Sales at Less than Fair Value,* 50 Fed.Reg. 52813 (Dec. 26, 1985) (no other production of certain brushes; FMV for that merchandise calculated on weighted average price of all imports to the U.S.).

The purpose of the state controlled-economy statute "is to arrive at the best estimate of foreign market value in the country of export." *Chemical Products Corp.,* 10 CIT at ——, 645 F.Supp. 293. As part of its inherent power to make the dumping determination, Commerce may use all reasonable ways and means authorized by law to achieve that end. *Zenith Radio Corp. v. United States,* 9 CIT 110, 113, 606 F.Supp. 695, 699 (1985), *aff'd,* 783 F.2d 184 (Fed.Cir. 1986). While the ideal choice of surrogates, based solely on economic comparability, may be India, the reasons set forth by Commerce in rejecting that source are in accordance with law. The Court must sustain the surrogate selection, as the means employed by Commerce are directed at effecting the entire statutory purpose.

*Ceramica Regiomontana,* 10 CIT at ——, 636 F.Supp. at 966.

## CONCLUSION

The Court considers there to be substantial evidence in the record to support Commerce's conclusion that the government of India did not consent to the use of price information from India from a concurrent unrelated investigation. Further, Commerce has reasoned that its ability to use information from India, such as a weighted average figure from the concurrent investigation, or from Customs invoices, or from IM–146 import statistics, is limited by: the restrictions on the use of confidential information, the requirements of using information that is verifiable, and the preferred methods set out in the regulations. This conclusion is in accordance with law, and procedure used by Commerce in calculating FMV does fall within the authorized methods. Plaintiffs' motion for judgment on the agency record must, therefore, be denied and the action dismissed. So ordered.