SONCO STEEL TUBE DIV., FERRUM, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Lone Star Steel Co., Defendant–Intervenor.

Court No. 86–07–00899.

United States Court of International Trade.

May 18, 1989.

Dow, Lohnes & Albertson, Washington, D.C., (William Silverman, Carrie A. Simon and Douglas J. Heffner), Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civil Div., U.S. Dept. of Justice, for defendant, Craig L. Jackson, Atty. Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendant.

Dewey, Ballantine, Bushby, Palmer & Wood, Michael H. Stein, Washington, D.C., for defendant-intervenor.

## OPINION AND ORDER

RESTANI, Judge:

Plaintiff, Sonco Steel Tube Division, Ferrum, Inc. (Sonco) brings this action challenging the final determination by the Department of Commerce, International Trade Administration (ITA) that oil country tubular goods (OCTG) from Canada are being sold in the United States at less than fair value. *Oil Country Tubular Goods from Canada,* 51 Fed.Reg. 15,029 (Apr. 22, 1986), as amended, 51 Fed.Reg. 29,579 (Aug. 19, 1986). In its opinion of August 18, 1988, *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 12 CIT ——, 694 F.Supp. 959 (1988), the court remanded this action to ITA for (1) a reconsideration and a fuller explanation of the agency's reasons for treating limited service OCTG as a fully-costed co-product of prime OCTG in its calculations of constructed value, (2) an explanation of why certain U.S. sales, which appeared unrepresentative of plaintiff's selling practices in the U.S., were

included in the fair value comparison, and (3) a fuller explanation of why early payment discounts provided to Sonco's customers were treated as reductions in U.S. price while no adjustments for such discounts were made to foreign market value. In its remand determination, dated November 1, 1988, ITA determined that the sales which plaintiff alleged were unrepresentative of its selling practices in the U.S. were in fact unrepresentative and excluded such sales from the fair value comparison. As a result of this exclusion, ITA calculated a new less than fair value margin of 3.18%. Upon remand, ITA adhered to its previous determination with regard to the remaining two issues. Plaintiff presently challenges these remand results.

## I. ITA'S TREATMENT OF LIMITED SERVICE OCTG

■ Plaintiff's arguments concerning ITA's treatment of limited service OCTG are essentially identical to those made by Ipsco, Inc., another Canadian producer of OCTG subject to this same investigation, in its challenge to ITA's final determination. Accordingly, the court's views on plaintiff's proposed by-product accounting methodology and on the accounting methodology actually employed by ITA as expressed in *Ipsco, Inc. v. United States*, 13 CIT ——, 714 F.Supp. 1211 (1989) are equally applicable in this case and need not be repeated in detail here.

In summary, the court found Ipsco's proposed methodology which simply assigns limited service OCTG a cost of production and/or constructed value equal to its actual net realizable value or estimated market value to be contrary to both the statute and ITA regulations. Additionally, the court found the methodology employed by ITA to be unreasonable because it failed to account for significant differences in value between the prime and limited service product in its calculations of foreign market value. In this case, as in *Ipsco*, this matter is remanded to ITA so that the agency may adopt a methodology for calculating foreign market value which eliminates the unfairness of failing to account for significant differences in value between the two types

of simultaneously produced products subject to investigation.

## II. ITA'S TREATMENT OF EARLY PAYMENT DISCOUNTS

In the previous opinion, the court questioned ITA's decision to treat early payment discounts provided to Sonco's U.S. customers as reductions in U.S. price while making no adjustments to foreign market value to account for similar discounts offered on home market sales of the same general class of merchandise as OCTG. Specifically, ITA was ordered to:

clarify whether it is agency policy to account for differing early payment discounts in the respective markets using a circumstances of sale adjustment, and if so under what circumstances. If a circumstances of sale adjustment could have been made here, ITA should indicate why plaintiff has not demonstrated entitlement to such an adjustment. If it is not agency policy to make circumstances of sale adjustments for early payment discounts, ITA must explain why it has made no other adjustment to constructed value.

*Sonco*, 12 CIT at ——, 694 F.Supp. at 965. In connection with its clarification of these points, ITA was directed to explain its decision in *Tool Steel from the Federal Republic of Germany*, 51 Fed.Reg. 10071 (Mar. 24, 1986), a previous determination in which the agency permitted early payment discount adjustments to foreign market value based on constructed value.

In the remand determination, ITA has provided the clarification requested by the court, stating that it does not have a policy of treating early payment discounts as circumstances of sale for which adjustments to foreign market value may be made and that it has been substantially consistent in following a policy of treating such discounts as reductions in price. In response to the court's concerns regarding the *Tool Steel* determination, ITA states, *inter alia*, "[t]o the extent that the case does indicate that the Department treated a discount as a circumstances of sale adjustment, the

case is simply wrong." Remand Determination at 13. On the other hand, plaintiff argues that ITA's statements to the contrary notwithstanding, the agency does have a policy of granting circumstances of sale adjustments for early payment discounts and that ITA's actions in this case were unreasonable.

Initially, it should be noted that discounts generally provided to customers in either the U.S. or home market do lower the final price to such customers and it is therefore not *per se* unreasonable for ITA to treat certain discounts as reductions in price in its calculations of foreign market value and U.S. price.[1] Although it remains unclear as to whether the adjustment made in *Tool Steel* was, in fact, a circumstances of sale adjustment,[2] ITA in its remand determination clearly repudiates the treatment of early payment discounts in this manner. *See* Remand Determination at 13. Furthermore, it is clear that ITA's policy of treating early payment discounts as reductions in price has been followed in most of its determinations. *See* Remand Determination at 13 n. 10 (listing previous determinations in which ITA treated early payment discounts as reductions in price).[3] Given ITA's definitive statement of its present

1. Plaintiff argues that ITA's policy on early payment discounts as expressed in the remand determination is inconsistent with the decision of the Court of Appeals for the Federal Circuit in *Smith–Corona Group, Consumer Prods. Div., SCM Corp. v. United States*, 713 F.2d 1568 (Fed. Cir.1983), *cert. denied* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Plaintiff's reliance on *Smith–Corona* is misplaced. *Smith–Corona* deals with the issue of whether certain periodic and monthly rebates based on sales volume were directly related to the sales under consideration. *See* 19 C.F.R. § 353.15 (1988). On its face, the case does not appear to address directly the more general issue of whether circumstances of sale adjustments may properly be made to foreign market value for rebates and discounts. Nonetheless, in *Zenith Radio Corp. v. United States*, 9 CIT 110, 115–16, 606 F.Supp. 695, 700–01 (1985) *aff'd* 783 F.2d 184 (Fed.Cir. 1986), *Smith–Corona* is interpreted as standing for the proposition that circumstances of sale adjustments under 19 U.S.C. § 1677b(a)(4)(B) may be made for rebates. The distinction between reduction in price and circumstances of sale apparently was important because of certain limitations on home market sales price reductions. In any case, neither *Smith–Corona* nor *Zenith* can be read to *require* ITA to treat all discounts or rebates in this manner. Likewise, neither case addresses the specific issue before this court, namely, whether ITA may properly treat early payment discounts as reductions in price. Plaintiff's *Smith–Corona* argument also assumes that all rebate and discount programs are analogous. In fact, such programs may have different effects requiring different treatments.

2. Defendant suggests that the fact that there were home market sales (which were found to be made at prices below the cost of production) in *Tool Steel* for which discounts may have been granted, whereas there were no home market sales of OCTG in this case and, hence, no home market discounts, may explain why an adjustment was made to constructed foreign market value in *Tool Steel* and not here. In actuality,

ITA is uncertain as to the meaning of *Tool Steel.* It should be noted, however, that there is no clear authority under which ITA may calculate constructed value one way in cases where there are no home market sales, and another way in cases where home market sales are disregarded because they were made at prices below the cost of production.

Additionally, the court is somewhat disturbed by ITA's inability to explain fully the agency's own previous determinations. Although the agency is not necessarily bound by its previous determinations, a finding as to the reasonableness of the agency's actions in a given case may depend, in part, on the agency's treatment of similar issues in previous cases. Whether or not ITA's inability to explain *Tool Steel* is understandable given changes of personnel, such inability may be prejudicial to the opposing party. Here, ITA's calculation seems to be essentially fair and non-arbitrary. Thus, plaintiff is not prejudiced.

3. Plaintiff cites *Cyanuric Acid and Its Chlorinated Derivatives from Japan*, 49 Fed.Reg. 7424 (Feb. 29, 1984) in support of its position that a circumstances of sale adjustment should be made for early payment discounts. In that determination, ITA stated that in calculating foreign market value based on home market prices it "made deductions, where appropriate, for after-sales rebates and discounts based upon competitive circumstances." *Id.* at 7425. In the remand determination in this case, ITA states that *Cyanuric Acid,* in fact, supports its position in this case. Remand Determination at 14.

Upon examination of the cited determination, it appears that it does not provide conclusive support for either plaintiff's or ITA's position. The rebates and competitive discounts at issue in *Cyanuric Acid* consisted of home market after-sale cash rebates and additional merchandise shipped at no extra cost. In order to account for these rebate and discount programs, ITA adjusted foreign market value downwards. Although ITA's response to petitioner's comment 6, 49 Fed.Reg. at 7428, at least, implies a

policy and the extent of its consistent past practice, the court does not find that ITA acted unreasonably or arbitrarily in this case based on the existence of the relatively few previous determinations cited in which the department may appear to have acted inconsistently.[4]

The court also notes an additional problem with plaintiff's request that the ITA grant a circumstances of sale adjustment for the difference between "the discounts provided by Sonco in the United States and the discounts that Sonco provided in Canada on the same class or kind of merchandise." Plaintiff's Comments on the Remand Determination at 22. As stated in ITA's remand determination, ITA "does not consider discounts to be actual expenses borne by a manufacturer, and as such did not include them in figure for general expenses when calculating constructed value." Remand Determination at 16 n. 11. Had ITA treated these discounts as expenses, the agency presumably would have utilized discount rates provided by Sonco in the home market on "merchandise of the same general class or kind as the merchandise under consideration," pursu-

ant to 19 U.S.C. § 1677b(e)(1)(B), in its calculation of constructed value. It might be argued that in such a situation, a circumstances of sale adjustment would be appropriate to factor out differences between the United States discount rate and the home market discount rate utilized in the constructed value calculation. This is precisely the method by which ITA calculated differences in credit expenses provided in each market for which a circumstances of sale adjustment was granted. Remand Determination at 16 n. 11. Because, however, ITA determined that discounts are not expenses to be included in its calculation of constructed value, and because plaintiff has failed to demonstrate that this decision was in any way contrary to law,[5] ITA was not obligated to consider discounts made on sales of the same general class or kind of merchandise in the home market or make the sort of adjustment requested here by plaintiff, but rather could treat the discounts as reductions in price.

Having found that ITA may treat the early payments discounts at issue here as reductions in price and that ITA is not required to make the requested circum-

---

circumstances of sale adjustment was made, most likely the distinction at issue here was not of consequence under the facts of the case. That is, an allowable reduction in price applicable to foreign market value may have the same effect as a downward adjustment to foreign market value based on a difference in circumstances of sale.

In *Monsanto Co. v. United States*, 12 CIT ——, 698 F.Supp. 285 (1988), which dealt with later cyanuric acid determinations, a program involving shipment of additional merchandise is referred to as a "rebate," for which a circumstances of sale adjustment is allowed. In actuality, the court simply upheld ITA's treatment of the program as a "deduction to foreign market value." Distinctions between mandatory and permissible treatment of such programs, between price reductions and circumstances of sale adjustments, and among various discount and rebate programs were not addressed.

4. Only two cases appear to fall into this category, *Tool Steel* and *Carbon Steel Wire Rod from Brazil*, 49 Fed.Reg. 14,156 (Apr. 10, 1984). The remaining cases cited for this proposition are inconclusive. *See also* note 3.

Plaintiff also argues that ITA's claim that it does not grant circumstances of sale adjustments for early payment discounts directly con-

tradicts statements made by the Department of Commerce in a November 1985 report submitted to Congress entitled, *Study of Antidumping Adjustments Methodology and Recommendations for Statutory Change.* As defendant notes, however, the section of the report cited by plaintiff is not a discussion of circumstances of sale adjustments and, in fact, immediately precedes the section of the report devoted to circumstances of sale adjustments.

5. Plaintiff's argument that Sonco's early payment discounts should be viewed as expenses to the producer rather than as reductions in price is not persuasive. Foregoing sales revenue, under any circumstances, may be loosely characterized as a cost to a producer. While plaintiff correctly notes that ITA has treated certain types of imputed or opportunity costs as real expenses in previous determinations, *see, e.g., Industrial Phosphoric Acid from Belgium,* 52 Fed.Reg. 25,436, 25,438–39 (Jul. 7, 1987) (finding the opportunity cost of holding inventory to be a real expense which may be deducted from exporter's sales price), it has failed to cite any authority indicating that ITA has a practice of treating discounts in this manner or which would require ITA to treat discounts as general expenses which must be included in ITA's calculation of constructed value under 19 U.S.C. § 1677b(e)(1)(B).

stances of sale adjustment under the facts of this case, there remains the question of whether some other type of adjustment or deduction to foreign market value to account for the early payment discounts was necessary. Neither defendant's nor plaintiff's comments on the *Tool Steel* case have convinced the court that an adjustment of any type to foreign market value was necessary to account for the early payment discounts under the facts of this case. In fact, plaintiff has not explained what the statutory basis for such an adjustment to constructed value might be, other than a circumstances of sale adjustment, and the necessity of such an adjustment has already been rejected as a basis for relief.[6] Accordingly, the court does not find that ITA erred in failing to make an adjustment to foreign market value to account for early payment discounts.

## CONCLUSION

This matter is remanded. ITA shall issue a determination on remand within thirty days utilizing a methodology which eliminates the unfairness of failing to account for substantial differences in value of the two types of simultaneously produced products subject to investigation. Within ten days thereafter the parties shall advise the court whether post-remand briefing is necessary, in which case a briefing schedule shall be proposed by plaintiff after consultation with opposing counsel. If ITA finds it necessary to reopen the investigation it shall so advise the court within 20 days hereof and shall, after consultation with the parties, propose a new schedule.

SO ORDERED.

---

**6.** If in this case, actual home market sales were being used as the basis for foreign market value, and early payment discounts were also given on those sales, ITA, for the reasons discussed *supra*, could treat discounts as reductions in price on both sides of the fair value equation. Here, however, the only "prices" used are U.S. prices, thus home market "prices" cannot be reduced. Although *Timken Co. v. United States,* 11 CIT ——, 673 F.Supp. 495, 507–8 (1987) indicates that circumstances of sale adjustments may be made even when foreign market value is based on constructed value, *see also Funai Elec. Co. v. United States,* 13 CIT ——, 713 F.Supp. 420, 423–425 (1989), it does not stand for the considerably broader proposition that any type of calculation or adjustment that can be made to price-based foreign market value must also be made to constructed value-based foreign market value.