NACHI–FUJIKOSHI CORPORATION
and Nachi America, Inc.,
Plaintiffs,

v.

UNITED STATES, Defendant,

Federal–Mogul Corporation and the
Torrington Company, Defendants–
Intervenors.

Court No. 91–08–00595.

United States Court of
International Trade.

July 16, 1992.

O'Melveny & Myers, Greyson L. Bryan, Erwin P. Eichmann, Greta L.H. Lichtenbaum, Bruce R. Hirsh and Steven A. Spencer, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis (Stephen J. Claeys, Attorney–Advisor, Office of the Chief Counsel for Import Admin. U.S. Dept. of Commerce, of counsel), for defendant.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Larry Hampel, for defendant-intervenor Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Patrick McDonough, for defendant-intervenor The Torrington Co.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Nachi–Fujikoshi Corporation and Nachi America, Inc. ("Nachi"), move pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record.

Nachi–Fujikoshi Corporation is a Japanese producer and exporter of certain antifriction bearings, and Nachi America, Inc. is its related U.S. subsidiary. On June 11, 1990, The Torrington Company initiated this administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed.Reg. 23,575 (1990). The preliminary results of this investigation were issued on March 15, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews,* 56 Fed. Reg. 11,186 (1991). The final results were issued on July 11, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews* ("Final Results"), 56 Fed.Reg. 31,754 (1991). The final dumping margins for Nachi were determined to be 10.72% for ball bearings and 10.50% for cylindrical roller bearings. *Id.* at 31,756.

In this action, plaintiffs claim that the Department of Commerce, International Trade Administration ("Commerce" or "Department"), erred by including plaintiffs' one home market sample sale in its calculation of foreign market value. Plaintiffs also claim that Commerce committed four ministerial errors in its calculation of plaintiffs' margins.

## DISCUSSION

Pursuant to the Tariff Act of 1930, in reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such rele-

vant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *The Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

### 1. *Sample Sale*

Plaintiffs claim that Commerce erred by including Nachi's one home market sample sale in its calculation of foreign market value. They claim that the Department ignored its established practice of excluding trial or sample sales from foreign market value. As a result, Nachi urges this Court to remand this case to Commerce to require the Department to address Nachi's home market sample sales argument and to explain its failure to follow its own established precedent.

According to 19 U.S.C. § 1677b(a)(1) (1988 & Supp.1992):

> The foreign market value of imported merchandise shall be the price, at the time such merchandise is first sold within the United States by the person for whom (or for whose account) the merchandise is imported to any other person ...
>
> (A) at which such or similar merchandise is sold, or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the *usual commercial quantities* and in the *ordinary course of trade* for home consumption.... (Emphasis added.)

█ The plaintiff has the burden of proving whether sales used in Commerce's calculations are outside the ordinary course of trade or not sold in usual commercial quantities. *See Koyo Seiko Co. v. United States*, 16 CIT ——, ——, 796 F.Supp. 1526, 1530 (1992); *see also Monsanto Co. v.*

*United States*, 12 CIT 937, 939–42, 698 F.Supp. 275, 277–80 (1988). This Court has affirmed Commerce's decision to include certain sales in its calculations of dumping margins when a plaintiff has failed to meet its burden of proof. *Id.* In this case, the administrative record is lacking substantial evidence proving that the sample sale in question was outside the ordinary course of trade or not sold in usual commercial quantities, and plaintiffs have failed to prove otherwise.

In support of its argument, Nachi offers two documents: a letter to the International Trade Administration dated November 27, 1990, Administrative Record ("AR") (Pub.) Doc. 545; and Nachi's home market verification report, AR (Non–Pub.) Doc. 223. Neither of these documents proves that the sample sale in question was outside the ordinary course of trade and not sold in the usual commercial quantities. In fact, to prove that the sample sale was sold in the usual commercial quantities, defendant-intervenor, The Torrington Co., referenced computer printouts of sales made for the model in question. *See The Torrington Company's Response to Plaintiffs' Rule 56.1 Motion for Judgment on the Agency Record*, Proprietary Appendix 11. By comparison, the quantity of the sample sale in this case was hardly unusual. *Id.*

Nachi further claims that Commerce has routinely excluded trial or sample sales and should do so here. For this argument, plaintiffs cite *Final Determination of Sales at Less Than Fair Value; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 30,700, 30,704 (1987). In that case, Commerce excluded certain sales from consideration because:

> The sales individually involved extremely small quantities of merchandise at prices substantially higher than the prices of the vast majority of sales reported. Most of these sales were later cancelled before the merchandise was invoiced to the purchaser. In the U.S. market, there were no comparable sales.

*Id.*

█ At the same time, however, Commerce has often *included* sales in its calcu-

lations because they were not deemed outside the ordinary course of trade or not deemed to be sold in the usual commercial quantities. *See, e.g., Final Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany,* 54 Fed.Reg. 18,992, 19,087–88 (1989). Commerce's determinations must be examined on an individual basis taking into account all of the relevant facts of each case. In addition, the agency is granted tremendous deference in making its decision. In this case, Nachi simply has not proven that the sample sale in question was not sold in usual commercial quantities or in the ordinary course of trade. Therefore, Commerce was justified to include this sale in its calculations and its decision is hereby affirmed.

Nachi alternatively claims that this case should be remanded to Commerce to require the Department to address thoroughly Nachi's home market sample sales argument and to explain its reasoning. In the issues appendix of this investigation, Commerce stated that it "agrees with Torrington [and] [a]ll sales reported as samples have been included in the margin calculations." *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review (Issues Appendix),* 56 Fed.Reg. 31,692, 31,713 (1991). Immediately prior to this it was stated that Torrington "contends that the respondents have not demonstrated that such sales are outside the ordinary course of trade [within the context of 19 U.S.C. § 1677b(a)(1) ]." *Id.*

■ Generally, an administrative agency must cite the reasons for its decision in order for the reviewing court to ascertain whether the agency acted arbitrarily. *See Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); *see also Asociacion Colombiana de Exportadores v. United States,* 12 CIT 1174, 1177, 704 F.Supp.

1068, 1071 (1988). A court, however, "may uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned." *Ceramica Regiomontana, S.A. v. United States,* 810 F.2d 1137, 1139 (Fed.Cir.1987) (quoting *Bowman Transportation,* 419 U.S. at 286, 95 S.Ct. at 442).

■ In this case, while Commerce's reasoning may not be spelled out in so many words, its decision is obvious in light of the determination as a whole. It is very convenient and irresponsible for plaintiffs to take a sentence out of context and to claim that Commerce failed to adequately address an issue. In this case, Commerce's path may reasonably be discerned; that being that it included the sample sale because Nachi failed to prove that the sample sale in question was not sold in the usual commercial quantities and in the ordinary course of trade. Consequently, a remand for further explanation is not necessary.

## 2. *Ministerial Errors*

Plaintiffs also claim that Commerce made several ministerial errors in its calculation of Nachi's final dumping margins and that this case should be remanded to Commerce to correct these errors.

### A. Research and Development Expenses

■ First, Nachi claims that Commerce double-counted Nachi's research and development expenses ("R & D") and that it was included in both selling, general and administrative expenses ("SG & A") and in the cost of manufacturing.

During the administrative review, Commerce furnished Nachi with a questionnaire to facilitate the calculation of dumping margins. Question 2 of section D of the questionnaire requested Nachi to explain the manner in which expenses were recorded in Nachi's records. Nachi's response was that:

> Research and development expenses are captured each month in a general and administrative expense account. At the end of each fiscal half-year, the amount which relates to current production is

transferred to current period manufacturing cost; the remainder is treated as a general and administrative expense item. *Plaintiffs, Nachi–Fujikoshi Corporation and Nachi America, Inc.'s Motion for Judgment on an Agency Record* ("Nachi's Motion"), Exhibit 6 at 12.

Question 4 of section D requested Nachi to itemize R & D costs and to explain the methodology used to allocate the costs.[1] In response to this question, Nachi stated that it did not itemize R & D costs. Nachi's response informed Commerce that it had included some R & D expenses in indirect factory expenses, some in general and administrative expenses ("G & A"), and allocated some to cost centers.[2]

In support of its contention that Commerce double-counted R & D expenses, plaintiffs cite two documents, Exhibits 5 and 6, to prove their argument. Nachi's Motion, Exhibits 5 and 6. Exhibit 5 is merely a typewritten table titled "Research and Development Expenses," and Exhibit 6 is Nachi's consolidated profit and loss statement. Neither of these documents indicate any evidence of double-counting and plaintiffs have not proven that there was any overlap of R & D expenses with general expenses or cost of manufacturing.

Therefore, Nachi's claim of double-counting is without merit and Commerce's R &

D calculations are affirmed and need not be recalculated.

**B. General and Administrative Expenses**

In its calculations, Commerce calculated Nachi's general and administrative expenses by subtracting Nachi's non-consolidated selling expenses from Nachi's consolidated selling, general and administrative expenses. Nachi asserts and Commerce agrees that this calculation was erroneous and that the case should be remanded. Therefore, this case is remanded to Commerce for recalculation of Nachi's general and administrative expenses, and in doing so it should subtract only Nachi's consolidated selling expenses from Nachi's consolidated selling, general and administrative expenses.

**C. Movement Expenses**

Nachi also asserts that Commerce erred by subtracting inland freight expenses from Nachi's adjusted home market price because Commerce subsequently compared the adjusted price to Nachi's cost of production which included inland freight expenses. Both Nachi and Commerce agree that Commerce's calculations were erroneous and therefore this case is to be remanded to Commerce to also recalculate Nachi's

---

1. Question 4 of section D states the following:

   *Product R & D and Engineering*

   Furnish your R & D costs for the products under investigation and any improvements related to their production. State where these costs have been included in your COM. Explain the method used to allocate the costs to the part.

   a) For the product R & D, provide the initial costs required for its design, including manufacturing equipment design.

   b) For the product-line R & D, provide any on-going R & D related to the product and to the product line for processing improvements.

   c) List separately the amount of any R & D which was purchased.

   d) General R & D for the company which is not related to a specific product or product line should be allocated to all products of the company and included in general expenses.

   *Plaintiffs, Nachi–Fujikoshi Corporation and Nachi America, Inc.'s Motion for Judgment on an Agency Record* ("Nachi's Motion"), Exhibit 6 at 26.

2. Nachi's response to question 4 was as follows:

   Exhibit D/I.A.1 contains information on the cost of production of bearings under review. Research and development expense is included in indirect factory expense in that Exhibit. For further information on research and development, see Response to Question D/II.B.2 and Exhibit D/III.B.2.b.5. The research and development expense incurred for each component could not be separately identified.

   Research and development costs cannot be identified with a particular bearing type. Some of these costs are captured in general and administrative expense, (but reported as research and development in COP/CV) some of these expenses are incurred in special factory overhead accounts and then allocated to cost centers. This latter category is included in the "fixed cost" component of the reported cost of production.

   Nachi's Motion, Exhibit 6 at 26–27.

adjusted home market price by including in it inland freight expenses.

### D. REBATE5H

■ In its calculations, Commerce also deducted a rebate, REBATE5H, from Nachi's home market price. Nachi alleges that Commerce should not have deducted this rebate because it was included in Nachi's cost of production.

When conducting an analysis of below cost of production sales, Commerce compares the cost of production with the home market price of the merchandise. 19 U.S.C. § 1677b(b)(2) (1988). In order to achieve an accurate comparison, Commerce has often made allowances for rebates. *See Daewoo Elecs. Co. v. United States,* 13 CIT 253, 284, 712 F.Supp. 931, 957–58 (1989); *Brother Indus., Ltd. v. United States,* 15 CIT ——, ——, 771 F.Supp. 374, 386 (1991); *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 13 CIT 409, 412 n. 3, 714 F.Supp. 1218, 1221–22 n. 3 (1989). Nachi agrees with this procedure, but deems it unnecessary in this case since the rebate was allegedly included in their cost of production.

The record in this case, however, is lacking substantial evidence proving Nachi's allegations. Furthermore, Nachi has offered no evidence indicating otherwise. Therefore, Commerce's deduction of REBATE5H from the home market price was reasonable and in accordance with law.

### CONCLUSION

In accordance with the foregoing opinion, this case is remanded to the Department of Commerce, International Trade Administration, for recalculation of general and administrative expenses and movement expenses pursuant to the instructions set forth in this opinion. Commerce's determination is affirmed in all other respects. Commerce shall report the results of the remand determination to this Court within sixty (60) days of the date this opinion is entered. Any comments or motions following the remand determination shall be due within thirty (30) days of the date Commerce files the remand determination with the court.