**NSK LTD. and NSK Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Timken Company, Defendant–Intervenor.**

**Court No. 92–01–00028.**

United States Court of International Trade.

Nov. 5, 1993.

Donohue and Donohue, Joseph F. Donohue, Jr., Kathleen C. Inguaggiato and Daniel W. Dowe, New York City, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Margaret E.O. Edozien, Washington, DC, for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, NSK Ltd. and NSK Corporation ("NSK"), move pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record contesting the Department of Commerce, International Trade Administration's ("Commerce") final determination in *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review* ("*Final Results*"), 56 Fed.Reg. 65,228 (1991). Specifically, plaintiffs claim that Commerce erred in treating (1) certain early

payment discounts as indirect selling expenses rather than direct reductions in price; and (2) certain commissions paid by NSK as indirect selling expenses rather than direct expenses. The period of review at issue is August 1, 1988 through July 31, 1989. *Id.*

### Discussion

■ In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir. 1990).

### 1. *Early–Payment Discounts*

■ NSK claims that Commerce erred in treating early-payment discounts as indirect selling expenses rather than as direct reductions to price. *Plaintiffs' Brief in Support of Motion for Judgment Upon the Agency Record* ("*Plaintiffs' Brief*") at 10. Commerce, however, rejected NSK's claim that early-payment discounts and commissions should be deducted directly from foreign market value ("FMV"), stating:

NSK reported three types of discounts and three types of commissions, all on a customer-specific basis. Because two types of discounts (the performance incentive discounts) were granted to the customer as a set percentage of each sale, we have determined that these discounts are directly related to each sale. Thus, performance incentive discounts are direct adjustments to the home market price since

the terms of the discounts remain consistent across all customer-specific sales. However, as the terms of the remaining discount program (the early payment discount) and the commissions are not consistent across all sales and were reported to the Department as a set percentage of each sale, we have determined that the allocation methodology does not directly tie this discount and these commissions to the sale. Therefore, we have reclassified these expenses as indirect selling expenses for the final results of review.

*Final Results,* 56 Fed.Reg. at 65,235.

Thus, NSK recorded early-payment discounts on a customer-specific basis rather than on a model or transaction specific basis. This creates two problems. First, the discounts are not tied to any specific products. Thus, it is questionable whether the discount had a direct relationship to the products in question. Secondly, it is possible that NSK gave discounts on shipments that did not include the products in question but would be credited with discounts towards those products.

In the past, Commerce has treated early-payment discounts as reductions in price. *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 13 CIT 409, 412, 714 F.Supp. 1218, 1221 (1989). In *Sonco,* Commerce submitted to the court that it had "been substantially consistent in following a policy of treating such discounts as reductions in price." *Id.* at 411, 714 F.Supp. at 1220. In this case, however, Commerce states that this practice should not be followed since the discounts NSK reported were not tied to the products in question and the terms for discounts were inconsistent among the different sales. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record* at 5.

The Court has repeatedly held that "in order for a discount or rebate to qualify as a direct cost to be subtracted from FMV, the discount or rebate must have been actually paid on all of the sales under consideration and allocated on the basis of actual cost and sales figures." *See Koyo Seiko Co. v. United States,* 17 CIT ——, ——, 1993 WL 366970, Slip Op. 93–176 at 7 (Sept. 9, 1993); *see also*

*Smith–Corona Group, Consumer Prods. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1580 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526, 1530 (1992).

In the case at hand, NSK gave discounts for early payment when a customer paid, regardless of what products the customer had purchased in that particular shipment. Thus, in light of these factors, Commerce's treatment of NSK's early-payment discounts was reasonable and this issue is hereby affirmed.

### 2. *Commissions*

NSK also contests Commerce's determination that certain commissions paid by NSK were indirect selling expenses rather than direct expenses. *Plaintiffs' Brief* at 16.

NSK claims its commissions should be treated as direct expenses in a circumstance of sale adjustment since it paid commissions only after having made a sale. *Id.* at 17.

According to 19 C.F.R. § 353.56 (1992),

(a) *In general.* (1) In calculating foreign market value, the Secretary will make a reasonable allowance for a *bona fide* difference in the circumstances of the sales compared if the Secretary is satisfied that the amount of any price differential is wholly or partly due to such difference. In general, the Secretary will limit allowances to those circumstances which bear a direct relationship to the sales compared.

(2) Differences in circumstances of sale for which the Secretary will make reasonable allowances normally are those involving differences in commissions, credit terms, guarantees, warranties, technical assistance, and servicing.

In *Comitex Knitters, Ltd. v. United States,* 16 CIT ——, ——, 803 F.Supp. 410, 416 (1992), the court reiterated the direct relationship requirement of the regulation stating that "[i]t is a well established rule that there be a direct relationship between the claimed adjustments and the sales under consideration to make a circumstance of sale adjustment and that Commerce need not make adjustments for indirect expenses."

**440**

Furthermore, "the burden of demonstrating entitlement to a circumstances of sale adjustment is on the party requesting the adjustment." *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 12 CIT 745, 751, 694 F.Supp. 959, 964 (1988). Thus, NSK is the party that must show the existence of a direct relationship between the commissions paid and the sales under consideration.

The Court has repeatedly upheld Commerce's determination of post-sale price adjustments as indirect selling expenses. *Koyo Seiko Co.,* 16 CIT at ——, 796 F.Supp. at 1530; *Koyo Seiko Co. v. United States,* 17 CIT ——, ——, 1993 WL 190929, Slip Op. 93–87 at 5 (June 1, 1993).

In *Koyo Seiko Co.,* 16 CIT at ——, 796 F.Supp. at 1530, this Court deemed Commerce's treatment of plaintiffs' post-sale price adjustments as indirect selling expenses because these post-sale price adjustments could not be directly correlated with sales of the subject merchandise. In this case, NSK likewise cannot show its commissions to be directly related to *any* specific product and, therefore, Commerce's determination as to this issue is affirmed.

### CONCLUSION

The discounts and commissions at issue in this case were not product-specific and NSK has been unable to show a direct relationship between the sales in question and the discounts or commissions it gave. Thus, Commerce's determination is affirmed in all respects and this case is hereby dismissed.

### JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision,

**IT IS HEREBY ORDERED** that plaintiffs' motion is denied in all respects; and it is further

**ORDERED** that this case is dismissed.