NSK LTD. and NSK Corporation,
Plaintiffs,

v.

UNITED STATES, Defendant,

The Timken Company, Defendant–
Intervenor.

Court No. 92–03–00159.
Slip Op. 94–22.

United States Court of
International Trade.

Feb. 8, 1994.

Donohue and Donohue, Joseph F. Donohue, Jr., Kathleen C. Inguaggiato and Daniel W. Dowe, New York City, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Amy S. Dwyer and Margaret E.O. Edozien, Washington, DC, for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, NSK Ltd. and NSK Corporation ("NSK"), commenced this action challenging certain aspects of the Department of Commerce, International Trade Administration's ("ITA") final results of its administrative review of imports of tapered roller bearings from Japan covering the period of August 1, 1989 through July 31, 1990. *Tapered Roller Bearings, Four Inches or Less In Outside Diameter, and Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review* ("*Final Results*"), 57 Fed.Reg. 4,975 (1992).

Specifically, plaintiffs claim that the ITA erred in determining (1) that certain home market early-payment discounts offered by NSK should be treated as indirect selling expenses rather than direct reductions to price and (2) that certain home market commissions offered by NSK should be treated as indirect selling expenses rather than direct selling expenses. *Plaintiffs' Brief in Support of Motion for Judgment Upon the Agency Record* ("*Plaintiffs' Brief*") at 9–17.

### Discussion

This Court must uphold final results of an ITA administrative review unless the ITA determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. Early–Payment Discounts

NSK contends that the ITA erred when it treated NSK's home market early-payment discounts as indirect selling expenses rather than direct reductions to price. *Plaintiffs' Brief* at 9–15.

ITA asserted its treatment of NSK's early-payment discounts was correct because "NSK was unable to provide information that ties the early payment discount directly to specific sales of in-scope merchandise." *Final Results,* 57 Fed.Reg. at 4,983. ITA explained that "in instances where a respondent fails to provide sufficient information to support its claim that a price adjustment can be tied to a specific sale in the home market, we make the adverse assumption and calculate the price adjustment in the same manner as we would calculate an indirect selling expense." *Id.*

NSK argues that because discounts are actually reductions in price, the ITA erred by not treating these discounts as a circumstance of sale adjustment and making a direct deduction from price as it has consistently done in the past. *Plaintiffs' Brief* at 9–10. NSK asserts that as its records correlated the discounts with customer-specific sales and its selling practice included early-payment discounts as a routine matter, a reasonable allocation provided a sufficiently direct relation between discounts and in-scope sales. *Id.* at 12–15. NSK argues that this allocation based on a ratio of each distributor's total discount to total sales war-

rants treating the discounts as direct deductions. *Id.* at 15.

■ ITA cannot use merchandise outside the scope of its review to assess antidumping duties. 19 U.S.C. § 1675(a)(2); *Torrington Co. v. United States,* 17 CIT ——, ——, 818 F.Supp. 1563, 1578–79 (1993).

■ More specifically, the U.S. Court of Appeals for the Federal Circuit has held that an adjustment must be directly correlated with specific in-scope merchandise on the basis of actual costs for the adjustment to be deducted from foreign market value as a direct selling expense. *Smith–Corona Group v. United States,* 713 F.2d 1568, 1580 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). In *Smith–Corona,* the court approved an apportionment of total rebates paid between in-scope and out-of-scope sales because the apportionment yielded the actual amount per unit paid on sales of in-scope merchandise. *Smith–Corona,* 713 F.2d at 1580. Such an apportionment was possible because the rebates in *Smith–Corona* were granted as a fixed percentage of sales, regardless of the models sold. *Id.*

This Court has been consistent in its adherence to this standard when considering apportionment methodologies. *See, e.g., Torrington Co. v. United States,* 17 CIT ——, ——, Slip Op. 93–234 at 7–9, 1993 WL 532048 (Dec. 10, 1993); *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526, 1530 (1992).

■ Where a home market discount or a rebate has not been directly correlated with specific in-scope merchandise on the basis of actual costs, this Court has consistently upheld the ITA's adverse assumption regarding the expense and has treated it as an indirect selling expense. *Torrington Co.,* 17 CIT at ——, Slip Op. 93–234 at 7–9, 1993 WL 532048; *NSK Ltd. and NSK Corp. v. United States,* 17 CIT ——, ——, 837 F.Supp. 437, 438–39 (1993); *Federal–Mogul Corp. v. United States,* 17 CIT ——, ——, 834 F.Supp. 1391, 1399–400 (1993).

■ In the case at hand, the ITA specifically requested that NSK directly correlate its discounts with sales of in-scope merchandise. Administrative Record Public Document Number ("AR Pub.Doc. No.") 57 at 2. NSK, however, reported its early-payment discounts on a customer-specific basis, not a product-specific or transaction-specific basis, and allocated discounts to in-scope merchandise by a ratio of total discount to total sales for each customer. AR Pub.Doc. No. 68 at 7–8. NSK stated it was unable to relate the discounts to specific sales of in-scope merchandise. *Id.* at 8. Further, NSK's early-payment discounts varied from sale to sale, depending upon the number of days after shipment that payment had been made. AR Pub.Doc. No. 50 at B–4, B–5.

Thus, after reviewing the administrative record, this Court finds that NSK has failed to present evidence that the discounts paid to each customer are the same for each sale of in-scope and out-of-scope merchandise. Therefore, the ITA's decision to treat NSK's home market early-payment discounts as indirect selling expenses was supported by substantial evidence and in accordance with law and this issue is hereby affirmed.

### 2. *Commissions*

NSK also contends that the ITA erred when it treated certain home market commissions paid by NSK as indirect selling expenses rather than direct selling expenses. *Plaintiffs' Brief* at 15–17.

ITA stated that the commissions at issue "were not granted as a straight percentage of each sale so that, even when reported on a customer-specific basis, a misallocation of the expense may occur between covered and noncovered merchandise." *Final Results,* 57 Fed.Reg. at 4,983.

NSK argues that because these commissions reduced the net price received by NSK and were paid only when sales were actually made, they should be treated as direct selling expenses pursuant to a circumstance of sale adjustment. *Plaintiffs' Brief* at 15–17. Citing 19 C.F.R. § 353.56 (1992), NSK contends that the fact that NSK only recorded the commissions on a customer-specific basis does not negate the direct relationship the

commissions have to the in-scope sales. *Id.* at 16.

According to 19 C.F.R. § 353.56:

(a) *In general.* (1) In calculating foreign market value, the Secretary will make a reasonable allowance for a *bona fide* difference in the circumstances of the sales compared if the Secretary is satisfied that the amount of any price differential is wholly or partly due to such difference. In general, the Secretary will limit allowances to those circumstances which bear a direct relationship to the sales compared.

(2) Differences in circumstances of sale for which the Secretary will make reasonable allowances normally are those involving differences in commissions, credit terms, guarantees, warranties, technical assistance, and servicing.

In *Comitex Knitters, Ltd. v. United States,* 16 CIT —, —, 803 F.Supp. 410, 416 (1992), the court reiterated the direct relationship requirement of the regulation stating that "[i]t is a well established rule that there be a direct relationship between the claimed adjustments and the sales under consideration to make a circumstance of sale adjustment and that Commerce need not make adjustments for indirect expenses."

■ Furthermore, "the burden of demonstrating entitlement to a circumstances of sale adjustment is on the party requesting the adjustment." *Sonco Steel Tube Div., Ferrum, Inc. v. United States,* 12 CIT 745, 751, 694 F.Supp. 959, 964 (1988). Thus, NSK must show the existence of a direct relationship between the commissions paid and the sales of in-scope merchandise.

■ This Court has upheld the ITA's treatment of commissions as indirect selling expenses when the producer could not directly correlate the adjustments with sales of in-scope merchandise. *NSK Ltd.,* 17 CIT at —, 837 F.Supp. at 439–440.

Thus, after reviewing the administrative record, this Court finds that NSK has failed to present evidence that the commissions paid were directly related to sales of in-scope merchandise. Therefore, the ITA's decision to treat NSK's home market commissions as indirect selling expenses was supported by substantial evidence and in accordance with law and this issue is hereby affirmed.

## CONCLUSION

The discounts and commissions at issue in this case were not reported on a product-specific basis and NSK has been unable to show a direct relationship between the sales of in-scope merchandise under consideration and the discounts or commissions it gave. Thus, the ITA's determinations to treat NSK's early-payment discounts and commissions as indirect selling expenses are affirmed in all respects and this case is hereby dismissed.

## JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein;

**IT IS HEREBY ORDERED** that plaintiffs' motion is denied in all respects; and it is further

**ORDERED** that this case is dismissed.